# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**BRENDA VAZQUEZ,**

       **Plaintiff,**

**v.**                                                              **Case No: 6:16-cv-1827-Orl-22GJK**

**INSIGHT BEHAVIORAL HEALTH SPECIALISTS, LLC and OLGA A. BARRETO,**

       **Defendants.**

## AMENDED REPORT AND RECOMMENDATION[1]

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:**    **JOINT MOTION TO REVIEW AND APPROVE SETTLEMENT AND DISMISS ACTION WITH PREJUDICE (Doc. No. 27)**
>
> **FILED:**      **June 6, 2017**
>
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED IN PART** and **DENIED IN PART**.

### I. FACTUAL BACKGROUND

On January 13, 2017, Plaintiff filed the operative complaint (the "Complaint") against Defendants alleging, *inter alia*, two claims under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 *et seq*. Doc. No. 14 at 6-9. In the Complaint, Plaintiff alleges: 1) an FLSA claim for

---

[1] This report and recommendation is amended solely to address the parties' request that the Court retain jurisdiction to enforce the terms of the parties' settlement agreement. *See* Doc. No. 27 at 3.

unpaid overtime and minimum wage against Insight Behavioral Health Specialists, LLC ("Insight"); and 2) an FLSA claim for unpaid overtime and minimum wage against Olga Barreto. *Id.* On January 27, 2017, Defendants filed a motion to dismiss and motion for summary judgment (the "Dispositive Motion"). Doc. No. 15. On April 20, 2017, the undersigned denied the Dispositive Motion. Doc. No. 21. On May 4, 2017, Defendants filed a notice of settlement. Doc. No. 23. The parties agreed to settle their dispute before Plaintiff filed her answers to the Court's interrogatories. On June 6, 2017, the parties filed a joint motion (the "Motion") to approve their FLSA settlement agreement (the "Agreement") and dismiss the case with prejudice.[2] Doc. No. 27. The parties attach a copy of the Agreement in support of the Motion. Doc. No. 27-1. The matter has been referred to the undersigned for a report and recommendation. Doc. No. 11. For the reasons that follow, the undersigned recommends that the Agreement be approved with certain modifications and that the case be dismissed with prejudice.

## II. APPLICABLE LAW

In *Lynn's Food Stores, Inc. v. United States Department of Labor*, 679 F.2d 1350, 1352-53 (11th Cir. 1982), the Eleventh Circuit addressed the means by which an FLSA settlement may become final and enforceable:

> There are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees. First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them . . . The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations. When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness.

---

[2] Plaintiff also alleges the following claims against Insight: 1) breach of contract; 2) quantum meruit; and 3) unjust enrichment. Doc. No. 14 at 4-5. The Agreement resolves these non-FLSA claims. Doc. No. 27 at 2.

Thus, unless the parties have the Secretary of Labor supervise the payment of unpaid wages owed or obtain the Court's approval of the settlement agreement, the parties' agreement is unenforceable. *Id.* Before approving an FLSA settlement, the Court must scrutinize it to determine if it is a fair and reasonable resolution of a bona fide dispute. *Id.* at 1354-55. If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement. *Id.* at 1354.

In determining whether the settlement is fair and reasonable, the Court should consider the following factors:

> (1) the existence of collusion behind the settlement;
> (2) the complexity, expense, and likely duration of the litigation;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the probability of plaintiff's success on the merits;
> (5) the range of possible recovery; and
> (6) the opinions of counsel.

*See Leverso v. SouthTrust Bank of Ala., Nat'l Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994); *Hamilton v. Frito-Lay, Inc.*, No. 6:05-cv-592-Orl-22JGG, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007), *report and recommendation adopted*, 2007 WL 219981 (M.D. Fla. Jan. 26, 2007). The Court should be mindful of the strong presumption in favor of finding a settlement fair. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).[3]

In FLSA cases, the Eleventh Circuit has questioned the validity of contingency fee agreements. *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009) (citing *Skidmore v. John J. Casale, Inc.*, 160 F.2d 527, 531 (2d Cir. 1947) ("We have considerable doubt as to the validity of

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

the contingent fee agreement; for it may well be that Congress intended that an employee's recovery should be net")). In *Silva*, the Eleventh Circuit held:

> That Silva and Zidell entered into a contingency contract to establish Zidell's compensation if Silva prevailed on the FLSA claim is of little moment in the context of FLSA. FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement. FLSA provides for reasonable attorney's fees; the parties cannot contract in derogation of FLSA's provisions. *See Lynn's Food*, 679 F.2d at 1352 ("FLSA rights cannot be abridged by contract or otherwise waived.") (quotation and citation omitted). To turn a blind eye to an agreed upon contingency fee in an amount greater than the amount determined to be reasonable after judicial scrutiny runs counter to FLSA's provisions for compensating the wronged employee. *See United Slate, Tile & Composition Roofers v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 504 (6th Cir. 1984) ("the determination of a reasonable fee is to be conducted by the district court regardless of any contract between plaintiff and plaintiff's counsel"); *See also Zegers v. Countrywide Mortg. Ventures, LLC*, 569 F. Supp. 2d 1259 (M.D. Fla. 2008).

*Id.* at 351-52.[4] For the Court to determine whether the proposed settlement is reasonable, plaintiff's counsel must first disclose the extent to which the FLSA claim has or will be compromised by the deduction of attorney's fees, costs, or expenses pursuant to a contract between the plaintiff and counsel, or otherwise. *Id.* When a plaintiff receives less than a full recovery, any payment from plaintiff's recovery above a reasonable fee improperly detracts from the plaintiff's recovery.[5] Thus, a potential conflict can arise between counsel and their client regarding how much of the plaintiff's total recovery should be allocated to attorney's fees and costs.[6] It is the Court's responsibility to ensure that any such allocation is reasonable. *Id.* As the Court interprets

---

[4] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

[5] From a purely economic standpoint, a defendant is largely indifferent as to how its settlement proceeds are divided as between a plaintiff and his or her counsel. Where a plaintiff is receiving less than full compensation, payment of fees necessarily reduces the plaintiff's potential recovery.

[6] This potential conflict is exacerbated in cases where the defendant makes a lump sum offer which is less than full compensation, because any allocation between fees and the client's recovery could become somewhat arbitrary.

the *Lynn's Food Stores, Inc.* and *Silva* cases, where there is a compromise of the amount due to the plaintiff, the Court should decide the reasonableness of the attorney's fees provision under the parties' settlement agreement using the lodestar method as a guide. In such a case, any compensation for attorney's fees beyond that justified by the lodestar method is unreasonable unless exceptional circumstances would justify such an award.

An alternate means of demonstrating the reasonableness of attorney fees and costs was set forth in *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222 (M.D. Fla. 2009). In *Bonetti*, the Honorable Gregory A. Presnell held:

> In sum, if the parties submit a proposed FLSA settlement that, (1) constitutes a compromise of the plaintiff's claims; (2) makes full and adequate disclosure of the terms of settlement, including the factors and reasons considered in reaching same and justifying the compromise of the plaintiff's claims; and (3) <u>represents that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.</u>

*Id.* at 1228 (emphasis added). Judge Presnell maintained that if the matter of attorney fees is "addressed independently and seriatim, there is no reason to assume that the lawyer's fee has influenced the reasonableness of the plaintiff's settlement." *Id.* The undersigned finds Judge Presnell's reasoning persuasive.

### III. ANALYSIS

**A. Settlement Amount**

Under the Agreement, Plaintiff will receive $670 which consists of $335 for unpaid wages and $335 for liquidated damages. Doc. No. 27-1 at 1-2. As noted above, the parties settled their dispute before Plaintiff filed her answers to the Court's interrogatories. Thus, it is unclear whether

Plaintiff compromised her FLSA claim. Nevertheless, the Motion states that a bona fide dispute existed between the parties. Doc. No. 27 at 1. After considering the risks of litigation, the parties decided to settle their dispute amicably. *Id.* The parties are represented by independent counsel who are experienced in handling FLSA claims. *Id.* at 3. Considering the foregoing, and the strong presumption favoring settlement, the undersigned recommends that the Court find the settlement amount to be fair and reasonable.

### B. Release Provisions

The Agreement contains two separate release provisions. The first release provision is found in paragraph six of the Agreement:

> 6. Other than as to the express rights and obligations set forth in this Agreement, and in consideration of the provisions, promises, terms and conditions of this Agreement, <u>Plaintiff hereby UNCONDITIONALLY, FULLY AND FINALLY RELEASES AND FOREVER DISCHARGES Defendants and the Released Parties from any and all</u> duties [and] <u>claims … of any and every kind, nature, and character whatsoever, raised in the lawsuit under the FLSA, or which could have been raised in the lawsuit under the FLSA.</u>

Doc. No. 27-1 at 2 (emphasis added). Thus, the first release provision is a limited release, and releases any and all claims of any and every kind, nature, and character that were raised or could have been raised under the FLSA. *Id.* The second release provision is found in paragraph seven of the Agreement:

> 7. <u>The claims released include</u>, but are not limited to, any claims under oral or written contracts; <u>any and all actions, causes of action, claims, potential claims, and demands of whatsoever kind or nature on account of any and all known and unknown damages, losses</u>, attorneys' fees, costs and injuries <u>resulting in damages to the Plaintiff in any way resulting from her alleged employment, volunteer service or incurred during the period of her alleged employment or volunteer service with the Defendants</u> …

*Id.* (emphasis added). Thus, the second release provision is a broad release that encompasses any and all claims, whether known or unknown, regarding Plaintiff's employment or volunteer service with Defendants. *Id.*

Courts within this District have questioned the propriety of broad and general releases on the fairness and reasonableness of an FLSA settlement. As U.S. District Judge Steven D. Merryday explained:

> An employee seeking to vindicate his FLSA rights often desperately needs his wages, and both the employee and the employer want promptly to resolve the matter. In a claim for unpaid wages, each party estimates the number of hours worked and the plaintiff's wage (i.e., establishes a range of recovery), and the court evaluates the relative strength of the parties' legal argument asserted in the particular case. However, in an FLSA action, neither party typically attempts to value the claims not asserted by the pleadings but within the scope of a pervasive release – that is, those "known and unknown," or "past, present, and future," or "statutory or common law," or other claims included among the boiler plate, but encompassing, terms unfailingly folded into the typical general release. Absent some knowledge of the value of the released claims, the fairness of the compromise remains indeterminate.

*Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351-52 (M.D. Fla. 2010). Nevertheless, courts have approved broad and general releases when separate consideration is given. *See Middleton v. Sonic Brands L.L.C.*, Case No. 6:13-cv-386-Orl-28KRS, 2013 WL 4854767, at *3 (M.D. Fla. Sept. 10, 2013) (approving a settlement agreement providing $100 as separate consideration for a general release); *Bright v. Mental Health Resource Center,* No. 3:10–cv–427–J–37TEM, 2012 WL 868804, at *5 (M.D. Fla. Mar. 14, 2012) (approving the settlement agreement as to one employee who signed a general release in exchange for the employer foregoing its counterclaims against her).

Here, the first release provision is limited to any and all claims of any and every kind, nature, and character that were raised under the FLSA or could have been raised under the FLSA.

Doc. No. 27-1 at 2. As noted above, this Court has required separate consideration for releases, but only when such releases are broad, general, or not limited to certain claims. *See Moreno*, 729 F. Supp. 2d at 1351-52; *Middleton*, 2013 WL 4854767 at *3. Thus, the undersigned recommends that the Court find the first release provision to be reasonable.

The second release provision, however, is a broad release that releases any and all claims, whether known or unknown, regarding Plaintiff's employment or volunteer service with Defendants. Doc. No. 27-1 at 2. The Agreement and the Motion do not state that separate consideration was given for the second release provision. Furthermore, the Motion contains no justification as to why the second release provision is included in the Agreement. Because of a severability clause, the second release provision is not fatal to the Agreement. *Id.* at 3. Accordingly, the undersigned recommends that the Court strike the second release provision pursuant to the Agreement's severability clause.

### C. Attorneys' Fees

Under the Agreement, Plaintiff's counsel will receive $1,830 consisting of $1,000 for attorneys' fees and $830 for costs. Doc. No. 27-1 at 2. In the Motion, the parties represent "that the attorneys' fees and costs being paid … were not a percentage of any recovery in this case." Doc. No. 27 at 2. Such a representation adequately establishes that the issue of attorneys' fees and costs was agreed upon without regard to the amount paid to Plaintiff. *See Bonetti*, 715 F. Supp. 2d at 1228. Accordingly, pursuant to *Bonetti*, the undersigned recommends that the Court find the Agreement's attorneys' fee provision to be fair and reasonable.

### D. Jurisdiction

The parties request that the Court dismiss Plaintiff's claims with prejudice, but retain jurisdiction to enforce the terms of the Agreement. Doc. No. 27 at 3. This Court ordinarily denies

requests to retain jurisdiction over the case after an FLSA settlement agreement has been found to be a fair and reasonable settlement of a plaintiff's FLSA claims. *See DeGraff v. SMA Behavioral Health Servs., Inc.*, 945 F. Supp. 2d 1324, 1330-31 (M.D. Fla. 2013) (citing authority). *See also Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 381, 114 S.Ct. 1673, 1677, 128 L.Ed.2d 391 (1994) (noting that "enforcement of [a] settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction"). The parties have provided no compelling reasons why the Court should retain jurisdiction to enforce the terms of the Agreement. Accordingly, the undersigned recommends that the Court decline to retain jurisdiction to enforce the terms of the Agreement.

## IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **GRANT IN PART** and **DENY IN PART** the Motion (Doc. No. 27) as follows:

1) The Court should **STRIKE** the broad release in paragraph seven of the Agreement (Doc. No. 27-1 at 2-3, ¶7); and

2) The Court should **GRANT** the Motion (Doc. No. 27) to the extent that the Court finds the Agreement, with the modification set forth above, to be a fair and reasonable resolution of Plaintiff's claims; and

3) The Court should **APPROVE** the Agreement (Doc. No. 27-1) as modified; and

4) The Court should decline to retain jurisdiction to enforce the Agreement; and

5) The Court should **DISMISS** the case with prejudice and direct the Clerk to close the case.

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. **In order to expedite the final disposition of this matter, if the parties have no objections to this report and recommendation, they may promptly file a joint notice of no objection.**

Recommended in Orlando, Florida on August 2, 2017.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Courtroom Deputy